United States District Court
Southern District of Texas

**ENTERED**

February 26, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| T.L. INDIVIDUALLY and A/N/F of J.T., a Minor, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:24-cv-1435 |
| NEW CANEY INDEPENDENT SCHOOL DISTRICT, TEXAS EDUCATION AGENCY, and MIKE MORATH, in his Individual and Official Capacity, | § § § § § § | |
| Defendants. | § § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] are Defendant New Caney Independent School District's ("NCISD") Motion for Summary Judgment (ECF No. 46), Defendant Texas Education Agency ("TEA") and Defendant Mike Morath's ("Morath") (collectively, "State Defendants") Motion for Summary Judgment (ECF No. 47), State Defendants' Third Motion to Dismiss (ECF No. 48), and Plaintiff T.L., Individually and a/n/f of J.T., a minor's ("Plaintiff") Motion for Judgment on Administrative Record against NCISD (ECF No. 49). Based on a review of the motions, arguments, and relevant law, the Court

---

[1] This case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 51).

**RECOMMENDS** NCISD's Motion for Summary Judgment (ECF No. 46) be **GRANTED**, State Defendants' Motion for Summary Judgment (ECF No. 47) be **GRANTED**, State Defendants' Third Motion to Dismiss (ECF No. 48) be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Judgment on Administrative Record against NCISD (ECF No. 49) be **DENIED**.

## I.   Background[2]

This case is an appeal under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, of a Special Education Hearing Officer's (the "SEHO") decision.  (ECF No. 16).  The IDEA provides that a disabled child's parents may file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6).

Here, Plaintiff is the mother of J.T., a minor.  (ECF No. 16 at ¶ 3).  J.T. previously attended Tavola Elementary School within NCISD.  (AR 006).  On May 24, 2023, Plaintiff requested a special education evaluation for J.T., also referred to as a Full and Individual Initial Evaluation ("FIIE").  (*Id.*).  Plaintiff

---

[2] The Administrative Record, on file with the parties, is referred to herein as "AR" with a corresponding page number.  The parties filed a USB with the certified administrative record with the Clerk's office in the Southern District of Texas.  (*See* ECF No. 25).  The AR is also available at ECF No. 37-1–37-7.

provided parental consent for the FIIE on July 14, 2023. (*Id.*). Plaintiff requested that the FIIE evaluate the areas of autism, speech, and occupation therapy. (*Id.*). Plaintiff also requested a Functional Behavior Analysis ("FBA") be performed. (*Id.*).

The FIIE was conducted in September and October 2023 and ultimately completed on October 17, 2023. (*Id.*). The areas of suspected disability were "specific learning disability in reading and math as well as speech, psychological and emotional disturbance." (*Id.*). Three evaluators conducted various portions of the FIIE. (*See* AR 006–010). An FBA was also completed by one of the evaluators. (AR 009). The results of the FBA included recommendations for a Behavior Intervention Plan ("BIP") for J.T. (*Id.*).

After the FIIE was complete, NCISD invited Plaintiff to meet with the three evaluators to review the evaluation and results. (AR 010). This meeting occurred on October 24, 2023, one week after NCISD completed the FIIE. (*Id.*). In the October 24 meeting, NCISD provided the overall conclusion that J.T. did not meet an educational disability condition. (*Id.*).

On November 2, 2023, NCISD held an Admission, Review, and Dismissal ("ARD") committee meeting to review the evaluation results and make a determination as to J.T.'s qualification for special education. (AR 011–012). Plaintiff also attended the ARD meeting. (*Id.*). The ARD committee found J.T.

did not qualify for special education. (*Id.*). Plaintiff ultimately signed ARD paperwork that agreed with the ARD determination. (AR 012).

On November 8, 2023, an incident occurred with J.T. at school that resulted in him being placed in NCISD's Disciplinary Alternative Education Program ("DAEP") due to a violation of the Student Code of Conduct. (*Id.*).

On November 27, 2023, Plaintiff filed a request for an expedited impartial due process hearing pursuant to the IDEA. (AR 001). A due process hearing was ultimately conducted on December 20 and 21, 2023. (AR 003). Plaintiff's claim consisted of the following issues:

- Whether NCISD violated its Child Find Obligations in failing to timely evaluate J.T. in all areas of suspected disability or need, including autism;

- Whether NCISD violated the IDEA by failing to develop an Individual Education Plan ("IEP"), including the provision of educational and related services;

- Whether NCISD violated Child Find in failing to timely complete an FBA for J.T.;

- Whether NCISD violated the IDEA by failing to develop a BIP for J.T.;

- Whether NCISD violated the IDEA by failing to conduct a Manifestation Determination Review ("MDR") for J.T. prior to his placement at the DAEP; and

- Whether NCISD failed to comply with procedural obligations under the IDEA and related laws.

4

(AR 004). On January 22, 2024, the SEHO issued its decision, which included findings of fact and conclusions of law. (AR 001–021). The SEHO concluded as follows:

- NCISD is responsible for properly identifying, evaluating, and serving students under the provisions of the IDEA;

- Plaintiff failed to carry the burden of proof to establish a violation of IDEA of a denial of a Free Appropriate Public Education ("FAPE");

- Plaintiff did not meet the burden of proof on the claims asserted against NCISD;

- Plaintiff failed to prove that NCISD violated its Child Find duties;

- Plaintiff did not meet the burden of proving that J.T. is a child with a disability who is eligible for special education and related services under the IDEA; and

- Plaintiff did not prove NCISD failed to work collaboratively with Plaintiff.

(AR 020–021). As such, the SEHO dismissed all of Plaintiff's claims with prejudice. On April 19, 2024, Plaintiff filed the instant case against NCISD and the State Defendants, appealing the decision of the SEHO. (ECF Nos. 1, 16). Plaintiff alleges violations under IDEA, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794; and Title II of the Americans With Disabilities Act ("ADA"), 42 USC § 12132. (*See* ECF No. 16 at ¶¶ 46–56).

## II.    Legal Standards

### a.  Review of Due Process Hearing

The IDEA offers states federal funds to assist in educating children with disabilities.  *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017).  In exchange for the funds, a state agrees to comply with a number of statutory conditions.  Among them, the state must provide a FAPE to all eligible children.  20 U.S.C. § 1412 (a)(1).  A FAPE includes both "special education" and "related services."  20 U.S.C. § 1401(9).  "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability"; "related services" are the support services "required to assist a child . . . to benefit from" that instruction.  20 U.S.C. §§ 1401(26), (29).  A state covered by the IDEA must provide a disabled child with such special education and related services "in conformity with the [child's] [IEP]."  20 U.S.C. §1401(9)(D).

Under the IDEA's "Child Find" provision, states are obligated to "identify, locate, and evaluate all children with disabilities residing in the State to ensure that they receive needed special-education services."  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009) (internal quotations omitted).  The Child Find obligations in the IDEA arise when a school district "has reason to suspect a disability coupled with reason to suspect that special education

services may be needed to address that disability." *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. 918, 950 (W.D. Tex. 2008). "If a determination is made that a child has a disability and needs special education and related services, an IEP must be developed for the child." 34 C.F.R. § 300.306(c)(2); *see also* 20 U.S.C. § 1414(d)(2)(A).

If a parent is dissatisfied with a school district's evaluation or educational placement of a child, the parent may file a due process complaint before an impartial hearings officer. 34 C.F.R. § 300.507(a)-512. A SEHO's decision on an alleged Child Find violation is then subject to review in this Court pursuant to 20 U.S.C. § 1415(i)(2)(c) ("[T]he [C]ourt . . . (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of the party; and (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate.").

Under the IDEA, a federal district court's review of a SEHO's decision is "virtually de novo." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). A court must (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of a party; and (3) base its decision on the preponderance of the evidence and grant such relief as the court determines to be appropriate. *Seth B. ex rel. Donald B. v. Orleans Par.*

*Sch. Bd.*, 810 F.3d 961, 966 (5th Cir. 2016) (quoting 20 U.S.C. § 1415(i)(2)(C)).

"The district court is required to accord 'due weight' to the hearing officer's findings, but it must ultimately reach an independent decision based on the preponderance of the evidence." *Id.* (quotation omitted). Unlike in a traditional summary judgment context, the existence of a disputed material fact will not defeat a motion for summary judgment on an IDEA claim. *Seth B.*, 810 F.3d at 966; *T.W. by K.J. v. Leander Indep. Sch. Dist.*, No. 17-cv-627, 2019 WL 1102380, at *2 (W.D. Tex. Mar. 7, 2019). Instead, the court looks to "whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Seth B.*, 810 F.3d at 966. "When no new evidence is presented to the district court in an IDEA suit[,] the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *D.C. v. Klein Indep. Sch. Dist.*, 711 F. Supp. 2d 739, 744 (S.D. Tex. 2010) (internal quotations omitted).

When reviewing a SEHO's decision under the IDEA, the district court's role is purposefully limited: "Congress left the choice of educational policies and methods where it properly belongs—in the hands of state and local school officials." *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir.

1989).  The court's task is not to second guess state and local policy decisions but to determine whether state and local school officials have complied with the IDEA.  *White ex rel. White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003).  Accordingly, courts cannot "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

> b.  Rule 12(b)(1) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) challenges the subject matter jurisdiction of the court.  *See* FED. R. CIV. P. 12(b)(1).  "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"  *Walmart Inc. v. U.S. Dep't of Justice*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the Constitution, lack the power to adjudicate claims.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Where a defendant challenges a plaintiff's jurisdictional allegations, the plaintiff bears the burden of supporting those allegations by competent proof.

*Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 481 (5th Cir. 2024); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Subject-matter jurisdiction may be addressed by considering: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Hopkins v. Wayside Schs.*, No. 23-50600, 2024 WL 3738478, at *4 (5th Cir. Aug. 9, 2024) (quoting *Ramming*, 281 F.3d at 161)). Thus, in examining a Rule 12(b)(1) motion to dismiss, the court is "empowered to consider matters of fact which may be in dispute." *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### III.   Discussion

As discussed, the State Defendants filed a Third Motion to Dismiss (ECF No. 48) and a Motion for Summary Judgment (ECF No. 47), NCISD filed a Motion for Summary Judgment (ECF No. 46), and Plaintiff filed a Motion for Judgment on Administrative Record against NCISD (ECF No. 49). The Court will address each motion in turn.

a.   The State Defendants' Third Motion to Dismiss (ECF No. 48)

The State Defendants argue (1) all claims against the Commissioner in his individual capacity should be dismissed because there is no right to sue the

Commissioner in his individual capacity under the IDEA, the ADA, or Section 504; (2) all claims against the State Defendants should be dismissed for lack of standing; and (3) all claims against the State Defendants should be dismissed because they are not ripe. (ECF No. 48-1 at 1–2).

### i. The Commissioner

First, the State Defendants argue that Plaintiff's claims against the Commissioner in his individual capacity should be dismissed because there is no right to sue the Commissioner in his individual capacity under the IDEA, the ADA, or the Rehabilitation Act. (*Id.* at 8–11). In response, Plaintiff states that the Court dismissed the claims against the Commissioner in his individual capacity in the Court's September 11, 2024 Order. (ECF No. 53 at 2 n.1). The State Defendants note that the Court's September 11, 2024 Order only dismissed Plaintiff's § 1983 claims against the State Defendants. (ECF No. 57 at 5 (citing ECF No. 33 at 9)). Nevertheless, the State Defendants argue that the Court should dismiss Plaintiff's claims against the Commissioner in his individual capacity because Plaintiff abandoned the claims by failing to address the claims in Plaintiff's Response. (*Id.* at 5).

The State Defendants are correct that the Court's September 11, 2024 Order did not dismiss Plaintiff's claims against the Commissioner in his individual capacity. (*See* ECF No. 33 at 9). The State Defendants are also

correct that "[t]his circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). Because Plaintiff failed to defend their claims against the Commissioner in his individual capacity, the Court must conclude Plaintiff has abandoned those claims. *See Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 525 (N.D. Tex. 2023). As such, the Court recommends the State Defendants' Motion to Dismiss be granted as to Plaintiff's claims against the Commissioner in his individual capacity. *See Aromaye v. Moynihan*, No. 3:24-cv-981, 2025 WL 426078, at \*2 (N.D. Tex. Feb. 7, 2025) (granting a motion to dismiss because plaintiff abandoned his claims by not responding to the motions to dismiss).

### *ii. Standing*

Second, the State Defendants argue Plaintiff's claims should be dismissed for lack of standing because (1) the alleged injury is not fairly traceable to the State Defendants and (2) a remedy against the State Defendants is unlikely to redress the alleged injury. (ECF No. 48-1 at 11–13).

The Constitution limits federal courts to deciding "Cases" and "Controversies." ART. III, § 2. "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–

96 (2022). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

Here, the State Defendants contend Plaintiff has failed to establish the second and third elements of standing: traceability and redressability. (ECF No. 48-1 at 14).

### 1. Traceability

Plaintiff alleges the State Defendants "failed to provide adequate protections by failing to ensure the compliance with procedural safeguards under the IDEA." (ECF No. 16 at ¶ 26). Plaintiff also alleges the State Defendants were put on notice that Plaintiff requested a due process hearing for a Child Find violation. (*Id.*). Plaintiff adds that the State Defendants have a responsibility to monitor NCISD to ensure that its obligations under the IDEA are being followed. (*Id.* at ¶ 28). Yet, despite allegedly being on notice that NCISD was not meeting its legal obligations under the IDEA, Plaintiff states the State Defendants did not act. (*Id.* at ¶ 29).

The State Defendants contend Plaintiff fails to show that J.T.'s injuries are traceable to the State Defendants because Plaintiff does not allege any specific conduct by the State Defendants. (ECF No. 48-1 at 12). Specifically, the State Defendants argue Plaintiff "does not explain what actions the State Defendants were required to take and did not" and "what the State Defendants failed to do that they were required to do or what they did that was prohibited." (*Id.*).

The traceability requirement "does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). In *Bennett*, the Supreme Court warned against "wrongly equat[ing] injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." 520 U.S. at 168–69. Although "it does not suffice if the injury complained of is the result of the independent action of some third party not before the court, that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Id.* at 169 (internal quotations and citations omitted).

The Texas Legislature has mandated that the TEA promulgate rules for the administration and funding of the special education program so that a

14

FAPE is available to all eligible disabled children.  TEX. EDUC. CODE ANN. § 29.001; *see also Wood v. Katy Indep. Sch. Dist.*, No. 09-cv-1390, 2011 WL 4383032, at \*4 (S.D. Tex. Sep. 20, 2011) (citing 20 U.S.C. § 1412(a)(11)(A)) ("The TEA, as the State's educational agency, is responsible for assuring that the requirements of the IDEA are met and that all educational programs for disabled children administered by any other agency or local agency meet the educational standards of the TEA.").  Further, the Fifth Circuit has expressly held that "either or both" the TEA and local school districts "may be held liable for the failure to provide a free appropriate public education."  *St. Tammany Par. Sch. Bd. v. State of La.*, 142 F.3d 776, 784 (5th Cir. 1998).

In *St. Tammany*, the court reasoned that the "IDEA places primary responsibility on the state educational agency, by providing that it 'shall be responsible for assuring that the requirements of this subchapter are carried out.'"  *Id.* (quoting 20 U.S.C. § 1412(6)).

> This language suggests that, ultimately, it is the [state educational agency]'s responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education. Therefore, it seems clear that [a state educational agency] may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented.

*Id.* (quoting *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997)); *see also Wood*, 2011 WL 4383032, at \*4 ("A state educational agency may be held liable for failure to provide a FAPE under IDEA.").  Under the IDEA, the

TEA is responsible for "providing a FAPE, addressing failures to provide appropriate services and taking corrective action to address the needs of the child." *John H. by next friend Denise H. v. Elgin Indep. Sch. Dist.*, No. 1:20-cv-816, 2021 WL 7081436, at \*5 (W.D. Tex. Oct. 25, 2021), *report and recommendation adopted sub nom. Denise H. v. Elgin Indep. Sch. Dist.*, No. 1:20-cv-816, 2021 WL 7081435 (W.D. Tex. Dec. 8, 2021).

Here, because Plaintiff alleges the State Defendants failed to provide Plaintiff with a FAPE under the IDEA, and a "state educational agency may be held liable for failure to provide a FAPE under IDEA," the Court finds Plaintiff has demonstrated that the alleged injuries are fairly traceable to the State Defendants. *See id.*; *Wood*, 2011 WL 4383032, at \*4; *Garcia v. Morath*, 624 F. Supp. 3d 690, 700 (W.D. Tex. 2022), *report and recommendation adopted*, No. 1:21-cv-1011, 2023 WL 163978 (W.D. Tex. Jan. 10, 2023).

### 2. Redressability

To satisfy the redressability element of standing, Plaintiff must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Lujan*, 504 U.S. at 561). The State Defendants argue that Plaintiff fails to show the State Defendants can redress Plaintiff's alleged injuries because the requested relied by Plaintiff

16

"is for direct services in line with what [a local educational agency], such as [NCISD], provides to its students." (ECF No. 48-1 at 13). Plaintiff responds that it is seeking the following to be provided: (1) Independent Educational Evaluations ("IEE"); (2) compensatory education; and (3) reimbursement of parent's educational and therapy expenses. (ECF No. 53 at 11). Plaintiff adds that "clearly TEA is capable of funding and providing oversight related to each of these requests" and that the State Defendants have a shared responsibility with NCISD to ensure the provision of FAPE. (*Id.* at 11–12).

Because "[t]he TEA . . . is responsible for assuring that the requirements of the IDEA are met and that all educational programs for disabled children administered by any other agency or local agency meet the educational standards of the TEA," the Court finds Plaintiff has alleged sufficient facts at the motion to dismiss stage to demonstrate redressability. *See Wood*, 2011 WL 4383032, at *4; *John H.*, 2021 WL 7081436, at *5; *Garcia*, 624 F. Supp. 3d at 700.

### iii. Ripeness

Lastly, the State Defendants argue Plaintiff's claims against them are not ripe for resolution because they "rest upon the conclusion that [NCISD] has violated J.T.'s right to a FAPE." (ECF No. 48-1 at 13). The State Defendants reason that "[u]ntil a finding has been made that [NCISD] did . . . fail to provide

17

a FAPE and that [NCISD] is unwilling or unable to comply with an order against it, Plaintiff's claim is merely hypothetical." (*Id.*).

"Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). Here, J.T. alleges he already has an injury in that he has been denied a FAPE as required by the IDEA. (*See* ECF No. 16 at ¶ 24). As such, there is "no abstraction or contingency to determining whether [the State Defendants] violated [their] obligations under the IDEA in this case." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 931. As such, the Court finds Plaintiff has alleged sufficient facts at the motion to dismiss stage to demonstrate ripeness.

Based on the foregoing, the Court recommends the State Defendants' Third Motion to Dismiss (ECF No. 48) be denied as to its standing and ripeness arguments.

### b. NCISD's Motion for Summary Judgment (ECF No. 46) and Plaintiff's Motion for Judgment on the Administrative Record Against NCISD (ECF No. 49)

NCISD moves for summary judgment on Plaintiff's claims against NCISD for violations of the IDEA, Section 504, and the ADA. (ECF No. 46 at 10). Conversely, Plaintiff moves for a judgment on the administrative record

and requests that the Court reverse the decision of the SEHO.  (ECF No. 49 at 5).

### i.  The IDEA

The parties seek their respective requests for relief on different grounds. NCISD argues that summary judgment is appropriate because (1) it fulfilled its Child Find obligation because it timely evaluated J.T.; (2) its FIIE complied with the IDEA's evaluation requirements; (3) J.T. was not entitled to an MDR under the IDEA; and it complied with the IDEA's procedural requirements. (*Id.* at 16–26).  Conversely, Plaintiff contends the AR shows that NCISD violated its Child Find obligation by (1) failing to evaluate in all areas of known or suspected disabilities; (2) failing to timely conduct an FBA and develop a BIP; (3) improperly predetermining that J.T. did not meet the special education eligibility criteria; and (4) failing to appropriately respond to Plaintiff's request for an IEE.  (ECF No. 49 at 2).  Plaintiff also argues the AR demonstrates NCISD (1) violated IDEA by placing J.T. in a DAEP without an MDR; (2) failed to develop an appropriate IED for J.T.; and (3) did not comply with its procedural obligations under IDEA.  (*Id.*).

1. <u>Child Find Obligation</u>

### a. *The SEHO's Decision*

The SEHO concluded that Plaintiff failed to prove NCISD violated its Child Find duties.  (AR 020).  In coming to that conclusion, the SEHO noted that Plaintiff claimed NCISD failed its Child Find duties by failing to completely evaluate J.T. for all of the possible disabilities that J.T.'s mother requested.  (AR 018).  However, the SEHO explained that "the law . . . requires only that the evaluation be complete in all areas of suspected disability."  (*Id.* (citing 34 C.R.F. § 300.304(c)(4)).  The SEHO described J.T.'s mother's areas of concern included autism, occupational therapy, and a counseling evaluation. (*Id.*).  The SEHO addressed each concern:

> The evidence shows that the autism evaluation was done to the extent that there was no suspicion of such, and the evaluator was clear that had there been any indication of autism that additional follow-up evaluations would have been completed.  With regard to the [occupational therapy] evaluation, the results were clear that [J.T.] had no difficulty or deficiency in either gross or fine motor skills.   Lastly, although the counseling evaluation was not completed, the evaluator did conduct an emotional and depressive assessment, and found no emotional disability.

(*Id.*).   The SEHO also noted that Plaintiff presented no evidence of the existence of a disability in any of the identified areas.  (*Id.*).  As a result, the SEHO found Plaintiff failed to establish that NCISD failed to comply with any requirements for an IDEA evaluation.  (*Id.*).

Lastly, the SEHO found J.T. did not qualify as a student with a disability in the areas evaluated.  (*Id.* (citing 34 C.R.F. § 300.8)).  The SEHO noted the "record is full of references to the likelihood of ADHD," but that a physician's diagnosis is necessary and it was not obtained at the time of the hearing.  (*Id.*).

### b.  Timeliness of the Evaluation

NCISD first argues that it fulfilled its Child Find obligation because it timely evaluated J.T.  (ECF No. 46 at 16).  Plaintiff does not appear to contest NCISD's argument.[3]  (ECF No. 55 at 9–15).

The IDEA's Child Find requirement obligates public school districts to identify, locate, and evaluate students with suspected disabilities "within a reasonable time after the school district is on notice of facts or behavior likely to indicate a disability." *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 320 (5th Cir. 2017).  "An unreasonable delay in complying with this duty may constitute a procedural violation of the IDEA." *Krawietz by Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 676 (5th Cir. 2018) (internal quotations omitted).  "A child find violation turns on three inquiries: (1) the date the child find requirement triggered due to notice of a likely disability; (2) the date the child find duty was ultimately satisfied; and (3) the reasonableness of the delay

---

[3] There are instances in Plaintiff's motion (ECF No. 49) and response (ECF No. 55) where Plaintiff raises a timeliness issue.  (*See* ECF No. 49 at 5, 13; ECF No. 55 at 1, 12). However, Plaintiff does not provide argument as to this issue in either her motion or response.

between these two dates." *Spring Branch Indep. Sch. Dist. v. O.W. ex rel. Hannah W.*, 961 F.3d 781, 793 (5th Cir. 2020).

Here, NCISD contends the earliest NCISD's Child Find duty could have been triggered was May 24, 2023, which was the day Plaintiff submitted a written request for an FIIE to the Direct of Special Education Services. (ECF No. 46 at 17 (citing AR 508)). Six days later, on May 30, 2023, NCISD contacted T.L. to schedule a meeting to obtain consent for the special education evaluation. (*Id.* (citing AR 520)). NCISD notes that, in Texas, if a parent submits a written request to a school district's director of special education services for an FIIE, the school district must respond within fifteen school days.[4] (*Id.* at 16 (citing 19 TEX. ADMIN. CODE § 89.1011(b)). In response, the school district must either (1) agree to conduct the FIIE and provide the parent with prior written notice of its proposal to evaluate and an opportunity to give written consent for the evaluation or (2) provide the parent with prior written notice of its refusal to conduct the evaluation. (*Id.* (citing 19 TEX. ADMIN. CODE § 89.1011(b)(1–2)). Thus, NCISD notes that it complied with the 15-school-day response timeline when it contacted T.L. to obtain consent for the FIIE. (*Id.* at 17).

---

[4] Full individual and initial evaluation timelines are measured in school days, excluding any days between the last instructional day of the spring term and the first instructional day of the fall term. 19 TEX. ADMIN. CODE § 89.1011(i).

The AR reflects that Plaintiff returned the consent form on July 14, 2023.[5] (AR 511). The AR also shows that on July 18, 2023, NCISD emailed Plaintiff because the consent form failed to indicate whether she granted consent for the evaluation. (ECF No. 46 at 17 (citing AR 510)). Plaintiff then submitted a signed consent form with the date "June 29, 2023." (AR 294). After obtaining consent for the evaluation, NCISD states it completed J.T.'s FIIE on October 17, 2023 (ECF No. 46 at 17 (citing AR 316–60) and convened the ARD committee on November 2, 2023 (*id.* (citing AR 361–65)). NCISD explains that, after receiving written consent from the parent, the school district must complete the initial evaluation and issue the corresponding report within 45 school days. (*Id.* (citing TEX. EDUC. CODE § 29.004(a)(1)). Further, after completing the FIIE, the school district must ensure the ARD committee determines the student's initial eligibility, and if appropriate, develops the IEP and placement within thirty calendar days of the completion of the written FIIE report. 19 TEX. ADMIN. CODE § 89.1011(g). Thus, NCISD argues (1) its completion of the FIIE fell within the required timeline as October 17, 2023 was the 45th school day of the 2023–2024 academic year and

---

[5] In its motion, NCISD states Plaintiff returned the consent form on July 14, 2024. (ECF No. 46 at 17). The Court assumes this is a typographical error.

(2) the ARD committee convened well within the 30-day deadline. (ECF No. 46 at 17).

Based on the evidence, NCISD's Child Find duty was triggered on May 24, 2023 (AR 006), the duty was ultimately satisfied on November 2, 2023 (AR 012), and the delay between the two dates was a period of approximately five months. The Court notes that a portion of this delay occurred the summer before the 2023–2024 academic year, a time in which J.T. could not have been losing educational opportunities or benefits. *See Heather v. Houston Indep. Sch. Dist.*, No. 17-cv-3579, 2021 WL 1216883, at *8 (S.D. Tex. Mar. 9, 2021), *report and recommendation adopted sub nom. Heather B. v. Houston Indep. Sch. Dist.*, No. 4:17-cv-3579, 2021 WL 1215848 (S.D. Tex. Mar. 31, 2021), *aff'd sub nom. Heather B., Next Friend of S.S. v. Houston Indep. Sch. Dist.*, No. 21-20229, 2022 WL 4299727 (5th Cir. Sept. 19, 2022) ("That two month delay came towards the end of the academic school year, at a time when any earlier evaluation of SS would not, and could not, have resulted in any lost educational opportunities or benefits for SS during the 2016-2017 school year."). Further, some of the delay came from waiting to receive parental consent. (AR 510). However, despite such delays, NCISD did comply with the relevant evaluation timelines. *See* 19 TEX. ADMIN. CODE § 89.1011; TEX. EDUC. CODE § 29.004(a)(1).

Based on a preponderance of the evidence, and while giving due weight to the SEHO's decision, the Court finds NCISD timely evaluated J.T. in compliance with IDEA's Child Find requirement.

### 2. NCISD's FIIE

NCISD then argues that its FIIE complied with IDEA's evaluation requirements by evaluating J.T. in all areas of suspected disability. (ECF No. 46 at 18–21). NCISD also adds that Plaintiff provided no evidence to support her allegation that NCISD failed to evaluate J.T. in all areas of suspected disability. (*Id.* at 21–22). Conversely, Plaintiff argues that evidence demonstrates J.T.'s mother requested an FIIE to include autism, NCISD agreed to evaluate in that area, but an NCISD evaluator unilaterally decided not to conduct the evaluation for autism. (ECF No. 49 at 12–13). Thus, it is Plaintiff's position that NCISD did not evaluate J.T. in all areas of suspected disability. (*Id.*).

The IDEA does not specifically define "suspected disability." *See* 20 U.S.C. §§ 1401, 1414(b)(3)(B). Rather, the only reference to "suspected disability" is the statutory mandate that a "local educational agency shall ensure that . . . the child is assessed in all areas of *suspected* disability." 20 U.S.C. § 1414(b)(3)(B) (emphasis added).

Despite Plaintiff's framing of the issue, "nowhere in the statute is there a requirement that a local education agency assess a child in *all* eligibility categories." *Heather H. v. Nw. Indep. Sch. Dist.*, 529 F. Supp. 3d 636, 656 n.6 (E.D. Tex. 2021), *aff'd*, No. 21-40316, 2022 WL 1800771 (5th Cir. June 2, 2022) (emphasis added). Nor is there a requirement that a local education agency assess a child in the eligibility categories requested by a parent. Thus, the relevant inquiry is whether NCISD assessed J.T. in all areas of *suspected* disability rather than the eligibility categories requested by a parent. 20 U.S.C. § 1414(b)(3)(B); *see also Heather H.*, 529 F. Supp. 3d at 658 (citing *Jaccari J. v. Bd. of Educ. of City of Chicago, Dist. No. 299*, 690 F. Supp. 2d 687, 706 (N.D. Ill. 2010) (concluding the IDEA "does not require testing in every conceivable area of disability" but, instead, requires "assessments in all areas of suspected disability")).

When reviewing whether a child was assessed in all areas related to the suspected disability, a district's evaluation is held to a standard of "reasonableness." *Heather H.*, 529 F. Supp. 3d at 659 (citing *J.S. v. Shoreline Dist.*, 220 F. Supp. 2d 1175, 1185 (W.D. Wash. 2002)). "The IDEA does not prescribe substantive goals for an evaluation but provides only that it be 'reasonably calculated to enable the child to receive educational benefits.'" *J.S.*, 220 F. Supp. 2d at 1185 (quoting *Rowley*, 458 U.S. at 207). These

evaluations must "use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent." 20 U.S.C. § 1414(b)(2)(A)–(C); 34 C.F.R. § 300.304(b)(1)–(3)).

Here, NCISD assessed J.T. using a variety of assessment tools and strategies in conducting the FIIE. (*See* AR 006). The SEHO noted "the areas of suspected disability were specific learning disability in reading and math as well as speech, psychological and emotional disturbance." (*Id.*). Three evaluators conducted various portions of the FIIE. (*Id.*). The evaluator who conducted the behavioral, psychological, and emotional components of the evaluation noted he had "a checklist of sorts" when he did the evaluation and that his checklist included "autism, emotional disturbance and specific learning disability." (AR 008). However, that evaluator testified that he "did not suspect autism and therefore did not complete any autism specific follow-up testing. He also indicated that if there had been any suspicion, that he would have done additional testing . . . ." (AR 009). Further, as noted by NCISD (ECF No. 46 at 21–22) and the SEHO (AR 018), Plaintiff presented no evidence supporting a diagnosis of autism. Thus, in assessing J.T. in all areas of suspected disability, including autism, the preponderance of the evidence

27

reflects that NCISD used a variety of assessment tools and strategies in compliance with IDEA's requirements.

Based on a preponderance of the evidence, and while giving due weight to the SEHO's decision, the Court finds NCISD's FIIE complied with the IDEA's evaluation requirements.

### 3. FBA

Plaintiff argues NCISD failed to have a Board-Certified Behavior Analyst ("BCBA") conduct an FBA and then failed to develop a BIP. (ECF No. 49 at 13–14). Plaintiff claims that instead of using a BCBA, NCISD "had a licensed specialist in school psychology observe [J.T.] in the classroom for a little more than an hour and then relied on the [licensed specialist in school psychology] for his opinions for the 'FBA.'" (*Id.* at 13). NCISD responds that this is the first time Plaintiff is raising this claim that NCISD's use of a school psychologist to conduct the FBA was inappropriate and a BCBA should have performed the assessment. (ECF No. 52 at 9). As such, because Plaintiff did not raise a legal issue at the due process hearing regarding the qualifications of NCISD's evaluation team who completed the FBA, NCISD argues Plaintiff is prohibited from raising this issue. (*Id.*). Plaintiff does not address NCISD's Response in its Reply. (*See* ECF No. 59 at 2).

"Before a plaintiff can bring a claim based on the IDEA, he or she must first exhaust their state administrative remedies." *J.V. v. Brownsville Indep. Sch. Dist.*, No. 1:18-cv-008, 2020 WL 3415747, at *7 (S.D. Tex. June 22, 2020) (citing 20 U.S.C. § 1415(l)).  The SEHO's decision does not state that Plaintiff made this argument previously.  By failing to raise this argument in the due-process hearing, the argument is not exhausted.  *See C.P. v. Krum Indep. Sch. Dist.*, No. 4:13-cv-63, 2014 WL 4651534, at *12 (E.D. Tex. Sept. 17, 2014) (concluding an issue that was not raised before the SEHO was not exhausted).  As such, the Court will not consider Plaintiff's argument that a BCBA should have conducted the FBA.  *See Novak v. Ennis Indep. Sch. Dist.*, No. 3:10-cv-2123, 2012 WL 13026966, at *3 n.6 (N.D. Tex. Sep. 11, 2012) (declining to consider arguments not exhausted before the SEHO).

As to Plaintiff's argument regarding a BIP, Plaintiff simply states NCISD ignored its own evaluator who recommended J.T. receive a BIP.  (ECF No. 49 at 13).  Plaintiff provides no argument or authority as to how this is an IDEA violation.  As such, the Court finds Plaintiff's argument without merit.

### 4. Predetermination

NCISD argues it did not predetermine J.T.'s ineligibility for special education services.  (ECF No. 46 at 23).  Plaintiff disagrees and contends

29

NCISD did improperly predetermine that J.T. did not meet the criteria for special education eligibility.  (ECF No. 49 at 14).

As explained by the Fifth Circuit:

Predetermination occurs when the state makes educational decisions too early in the planning process, in a way that deprives the parents of a meaningful opportunity to fully participate as equal members of the IEP team.  To avoid a finding of predetermination, there must be evidence the state has an open mind and might possibly be swayed by the parents' opinions and support for the IEP provisions they believe are necessary for their child.  But, the right to provide meaningful input is simply not the right to dictate an outcome and obviously cannot be measured by such.

*E. R. by E. R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 769 (5th Cir. 2018) (internal quotations and citations omitted).

Here, Plaintiff argues NCISD held a meeting with J.T.'s mother to discuss the FIIE and that "[t]his meeting did not meet the legal requirements of an ARD Committee Meeting."  (ECF No. 49 at 14).  During the meeting, Plaintiff states "the three individuals who conducted the Student's FI[I]E confirmed to the Student's mother that he did not meet the criteria for eligibility as a student in need of special education services."  (*Id.*).  It is Plaintiff's position that "[t]his was very clearly an improper predetermination." (*Id.* at 15).  Plaintiff also adds that "[w]hen [NCISD] did hold an ARD Committee meeting . . ., it did not even discuss the Student's FI[I]E as required," the meeting lasted less than twenty minutes, and NCISD staff

instructed J.T.'s mother to "indicate 'agree' when signing the paperwork." (*Id.*).

For support, Plaintiff cites the Audio Exhibit of the ARD committee meeting

but does not cite to any specific portion of the meeting. (*Id.*).

In response, NCISD explains that its evaluation team did meet with

J.T.'s mother to review the FIIE results on October 24, 2023. (ECF No. 52 at

11). However, NCISD argues the purpose of the meeting was to support J.T.'s

mother's ability to "meaningfully participate" in the upcoming ARD committee

meeting. (*Id.*). NCISD asserts that when the ARD committee meeting

convened on November 2, 2023, NCISD reviewed the FIIE results again and

"afforded [Plaintiff] ample opportunity to provide input." (*Id.* at 12). NCISD

adds that "[Plaintiff] was not pressured to sign the documentation at the

conclusion of the meeting; rather, she declined to sign at that time, took the

documentation home for review, and later returned it signed to NCISD,

indicating her agreement." (*Id.* (citing AR 362)).

The SEHO's decision states "[t]he evidence . . . clearly established that

the Student's mother was given several opportunities through the evaluation

review meeting to ask questions, request clarification, and provide input and

comments" during the October 24, 2023 meeting. (AR 010). Later, at the ARD

committee meeting, "the Student's mother was asked if she had any questions

about the evaluation. The evidence also demonstrated that the Student's

mother did not voice disagreement with the evaluation or the DNQ (Does not Qualify) decision at the ARD."[6] (AR 011).

Based on the administrative record, the Court cannot find by a preponderance of the evidence either that J.T.'s ineligibility for special education services was predetermined by NCISD, or that J.T.'s mother was deprived of her right to meaningfully participate in the decision process. "'[P]redetermination is not synonymous with preparation.'" *E. R.*, 909 F.3d at 769 (quoting *Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 610–11 (6th Cir. 2006)). In this case, NCISD was prepared. *See M.V. v. Conroe Indep. Sch. Dist.*, No. 18-cv-401, 2019 WL 193923, at *5 (S.D. Tex. Jan. 15, 2019) (finding no predetermination where a school district had prepared a draft decision document before an MDR meeting). Further, Plaintiff had the

---

[6] Plaintiff argues this case is similar to "*John H. v. Elgin ISD*, Docket No. 125-SE-1219 (May 4, 2020)." (ECF No. 49 at 14). NCISD contends Plaintiff overlooks several dissimilarities between the instant case and the *John H.* case. (ECF No. 52 at 11). NCISD explains that, "[i]n concluding that the school district impeded the parent's ability to participate in the decision-making process, the SEHO found that the district imposed an arbitrary one-and-a-half-hour time limit on the ARD committee meeting, conducted the meeting in a manner that discouraged parental questions, abruptly ended it before the announced time limit, and attempted to substitute outside meetings for the formal ARD process." (*Id.* (citing *Student v. Elgin Indep. Sch. Dist.*, TEA Dkt. No. 125-SE-1219, at 22–23, https://tea.texas.gov/about-tea/government-relations-and-legal/special-ed-due-process-hearings-2020/125-se-1219elgin-isd.pdf (last visited Feb. 18, 2026))). Having reviewed the *John H.* case, the Court agrees with NCISD that it is factually distinguishable from the instant case. *See Student*, TEA Dkt. No. 125-SE-1219, at 22–28 ("[T]he decisions of the ARD committee were not reasonably informed by the input of Parent, do not provide Student with a FAPE, and are not reasonably calculated to enable this student to make progress appropriate in light of this student's circumstances.").

opportunity to participate in both the October 23, 2023 meeting and the ARD committee meeting. The Court notes, again, that a parent's "right to provide meaningful input is simply not the right to dictate an outcome and obviously cannot be measured by such." *White ex rel. White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 380 (5th Cir. 2003). Plaintiff offers no reason to believe that NCISD "would not have listened to, and considered" Plaintiff's position at the ARD meeting. *See E.R.*, 909 F.3d at 769. As such, the Court finds NCISD did not predetermine that J.T. did not meet the criteria for special education eligibility.

### 5. IEE

Plaintiff contends NCISD failed to appropriately respond to Plaintiff's request for an IEE. (ECF No. 49 at 15). NCISD argues this legal issue was not raised during the due process hearing and is, therefore, not properly before the Court. (ECF No. 52 at 12). However, NCISD also affirmatively argues that there is no genuine issue of material fact as to NCISD's alleged failure to respond to an IEE request because no such request was ever made. (ECF No. 46 at 26).

The SEHO notes that Plaintiff's requested relief included the following: "Order an Independent Educational Evaluation (IEE) to be performed by the Petitioners' provider of choice . . . ." (AR 005). However, the SEHO later states

33

that "there was no evidence that the Student's mother, or anyone on Petitioner's behalf, requested an Independent Education Evaluation (IEE) from the District." (*Id.* at 011). For support, the SEHO cited portions of the transcripts from the Due Process Hearing. (AR 848–850, 909–910). During the hearing, the hearing officer stated, "the record reflects that no IEE request has been made." (AR 850). The SEHO provided the following analysis as to this issue:

> With regard to the Petitioner's assertion that the Petitioner is entitled to an IEE at District expense, no evidence was submitted to demonstrate that Petitioner requested an IEE. While it is claimed in the closing brief that an IEE was requested as part of Petitioner's pleading or complaint initiating this due process proceeding, the pleading was never entered into evidence. Pleadings alone are not evidence. As no evidence was presented on this issue, no ruling will be made.

(AR 020).

Here, Plaintiff provides no evidence that an IEE was requested. In fact, Plaintiff cites to testimony from the due process hearing where J.T.'s mother was asked if she was contacted about an IEE and she responds, "No. I don't know what that is." (AR 835). Without evidence that Plaintiff actually requested an IEE from NCISD, the Court finds Plaintiff fails to show NCISD failed to appropriately respond to such a request.

6.  <u>Manifestation Determination</u>

Plaintiff argues NCISD violated IDEA by placing J.T. in a DAEP without an MDR.  (ECF No. 49 at 16).  Conversely, NCISD argues J.T. was not entitled to an MDR.  (ECF No. 46 at 22).

Per 20 U.S.C. § 1415(k)(5)(A), a student who has not been determined to be eligible for special education and who has engaged in behavior that violates a code of student conduct, may be entitled to an MDR if the local educational agency had knowledge that the student was a child with a disability before the behavior leading to discipline occurred.  If a local educational agency proposes a disciplinary removal that will constitute a change of placement, the ARD committee must conduct an MDR to determine whether the conduct resulting in removal is a manifestation of the child's disability.  *Id.* § 1415(k)(1)(E).  If the conduct was a manifestation of the child's disability, the local educational agency must return the child to the placement from which they were removed. *Id.* § 1415(k)(1)(F)(iii).  A student is not entitled to an MDR, however, if "the child has been evaluated and it was determined that the child was not a child with a disability."  *Id.* § 1415(k)(5)(C).

Here, the incident that led to J.T. being placed at NCISD's DAEP occurred on November 8, 2023.  (AR 012).  At that point, NCISD had already determined that J.T. did not qualify for special education services.  (*Id.*).  Based

on this timeline, the evidence establishes that J.T. was not entitled to an MDR prior to his placement in the DAEP. *See* 20 U.S.C. § 1415(k)(5)(C). Thus, Plaintiff's argument that NCISD violated IDEA by placing J.T. in a DAEP without an MDR fails.

### 7. IEP

Plaintiff argues NCISD failed to develop an appropriate IEP for J.T. (ECF No. 49 at 17). NCISD responds that J.T. did not qualify for IDEA's benefits and, thus, was not entitled to an IEP. (ECF No. 52 at 14).

As discussed, after completing an FIIE, the school district must ensure that the ARD committee determines the student's initial eligibility, and if appropriate, develops an IEP and placement, within thirty calendar days of the FIIE report's completion. 19 TEX. ADMIN. CODE § 89.1011(g). An IEP is the "means by which special education and related services are tailored to the unique needs of a particular child." *Endrew F.*, 580 U.S. at 391.

Thus, because J.T. did not have a qualifying disability, J.T. was not entitled to an IEP. *See R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1008 (5th Cir. 2010) (explaining that IDEA requires school district in states receiving designated federal funds to implement procedures and policies that assure that each disabled student receives a FAPE and that, to ensure that a disabled child receives a FAPE, parents and school district collaborate to

develop an IEP). As such, Plaintiff's argument that NCISD failed to develop an appropriate IEP for J.T. fails.

### 8. Procedural Obligations

Lastly, Plaintiff argues NCISD violated numerous procedural obligations and provides a list of nine alleged violations. (ECF No. 49 at 21). Specifically, Plaintiff argues NCISD committed the following violations: (1) reviewing the FIIE outside of the ARD committee meeting; (2) predetermining J.T. did not meet the criteria for special education services; (3) instructing Plaintiff to "agree" to the ARD committee's decision; (4) failing to include Plaintiff's advocate and/or attorney on communications; (5) failing to hold an MDR prior to placing J.T. in DAEP; (6) holding an MDR without J.T.'s mother, advocate, or attorney; (7) "[f]ailing to have all required members present for a resolution session;" (8) failing to respond to Plaintiff's request for an IEE; and (9) telling Plaintiff she needed to get J.T. an ADHD diagnosis. (*Id.*). Most of these "violations" have already been addressed by this Court. To the extent the "violations" were not specifically addressed by the Court, Plaintiff fails to provide evidence or authority that these violations resulted in J.T. being denied a FAPE. The Court finds Plaintiff's argument that NCISD violated numerous procedural obligations fails.

### ii.  Section 504 and the ADA

NCISD also seeks summary judgment on Plaintiff's claims for violations of Section 504 and the ADA.  (ECF No. 46 at 27).  Plaintiff's Section 504 and ADA claims stem from and are synonymous with the IDEA claims.  (*See* ECF No. 16 at ¶¶ 49–56).  Plaintiff alleges NCISD failed to reasonably accommodate Plaintiff's disability to ensure a FAPE.  (*Id.* at ¶ 55).  Further, Plaintiff's arguments regarding the Section 504 and ADA claims are the same arguments Plaintiff presented for the IDEA claim.[7]  (*See* ECF No. 55 at 23–25; *see also* ECF No. 69 at 5–6).

In the Fifth Circuit, issue preclusion applies when the legal standards underlying the IDEA, the ADA, and Section 504 claims are not "significantly different."  *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).  "Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."  *Id.*

Having already resolved the IDEA claims in NCISD's favor, the Court finds that Plaintiff cannot bring redundant claims under Section 504 and the ADA.  *See M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, No. 18-cv-401, 2018

---

[7] For example, Plaintiff argues NCISD failed to complete an FIIE for Plaintiff, failed to evaluate Plaintiff in all areas of suspected disability, and made its own predetermination as to Plaintiff.  (*See* ECF No. 55 at 23–25).

WL 4564948, at *7 (S.D. Tex. Sep. 24, 2018) ("Resolving the IDEA claims in a school district's favor precludes a plaintiff's resort to redundant claims under the ADA and § 504.") (citing *Ind. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996)); *see also R. R. by J. R. v. Min. Wells Indep. Sch. Dist.*, No. 24-11074, 2025 WL 2543998, at *1 (5th Cir. Sep. 4, 2025) (affirming summary judgment in favor of a school district on a student's ADA and Section 504 claims where the district court found the claims were issue precluded because they "stem[med] from" and were "synonymous" with the student's IDEA claims); *W.H. by & through Larry G. v. Fort Bend Indep. Sch. Dist.*, No. 4:24-cv-1515, 2025 WL 2147067, at *20 (S.D. Tex. July 29, 2025) (finding Section 504 claim failed as a matter of law where there was a "connection" between an IDEA claim and Section 504 claim such that if the IDEA claim failed, the Section 504 claim would also fail).

In addition, Plaintiff's Section 504 and ADA claims fail even if the Court evaluated the claims under the newly clarified deliberate indifference standard. Previously, to survive summary judgment on a Section 504 or ADA claim in the educational context, a plaintiff would have to provide evidence of a school district exhibiting bad faith or gross misjudgment. *See D.H.H. by Rob Anna H. v. Kirbyville Consol. Indep. Sch. Dist.*, No. 20-40315, 2021 WL 4948918, at *2 (5th Cir. Oct. 22, 2021) (citing *D.A. ex rel. Latasha A. v. Houston*

*Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010) ("We concur that facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA.")).  However, in *A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335 (2025), the Supreme Court "rejected the heightened 'bad faith and gross misjudgment' standard . . . [and] held 'that ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts.'"  *W.H.*, 2025 WL 2147067, at *20 (quoting *A. J. T.*, 605 U.S. at 345).   Thus, the appropriate standard is now deliberate indifference.  *Id.* (citing *A. J. T.*, 605 U.S. at 345).

The Fifth Circuit describes deliberate indifference as a "high bar" that requires a showing that the challenged action be "clearly unreasonable in light of the known circumstances."  *Id.* (first quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) and then quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).  The Supreme Court and the Fifth Circuit "recognize that in ruling on a motion for summary judgment, a district court can determine, as a matter of law, that a party was

not deliberately indifferent." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 370 (5th Cir. 2019).

Here, there is no evidence to suggest it was "clearly unreasonable" for NCISD to find Plaintiff was not eligible for special education. In opposition, Plaintiff does not address whether NCISD was deliberately indifferent and instead argues a deliberate indifference standard should not apply. (ECF No. 69 at 4). Plaintiff then focuses her response on how there is a question of material fact as to whether NCISD intentionally discriminated against Plaintiff. (*Id.* at 5–6). As discussed, the appropriate standard for the Court to consider is deliberate indifference. *W.H.*, 2025 WL 2147067, at *20 (citing *A. J. T.*, 605 U.S. at 345).

Based on the foregoing, the Court finds there is no genuine dispute of material fact as to whether NCISD was deliberately indifferent. As such, Plaintiff's Section 540 and ADA claims fail, and the Court recommends NCISD's motion for summary judgment be granted as to these claims.

c. The State Defendants' Motion for Summary Judgment (ECF No. 47)

The State Defendants seeks summary judgment on Plaintiff's IDEA, Section 504, and ADA claims. (ECF No. 47 at 16–22).

Plaintiff's IDEA claim against the State Defendants is based on her allegations against NCISD. (*See* ECF No. 54 at 9–21). Plaintiff argues the

41

State Defendants were aware that (1) NCISD failed to evaluate Plaintiff in all areas of known or suspected disabilities (*id.* at 10–11); (2) NCISD failed to timely conduct an FBA and develop a BIP (*id.* at 11–12); (3) NCISD predetermined Plaintiff did not meet special education eligibility (*id.* at 12–14); (4) NCISD failed to respond to Plaintiff's request for an IEE (*id.* at 14–15); (5) NCISD was using Response to Intervention strategies[8] (*id.* at 15–17); and (6) NCISD violated its procedural obligations (*id.* at 17–20).

Because this Court has already addressed each of these arguments and found that NCISD did not violate IDEA, the Court finds the State Defendants are entitled to summary judgment on Plaintiff's IDEA claim as a matter of law. *Heather*, 2021 WL 1216883, at \*11 ("[B]ecause there was no actionable denial of IDEA services by HISD and Pearland ISD, and no actionable violation by HISD and Pearland ISD of their Child Find obligations under the IDEA, there is no viable claim against TEA and summary judgment in TEA's favor is warranted.").

Regarding Plaintiff's Section 504 and ADA claims, the State Defendants argue Plaintiff cannot raise a material fact question as to whether Plaintiff has a disability. (ECF No. 47-1 at 18–22). First, as discussed, to the extent

---

[8] Plaintiff mentions in her Motion for Judgment on the Administrative Record that NCISD "repeatedly ignored that none of the general 'Response to Intervention' strategies had helped and the Student's behavior was getting worse." (ECF No. 49 at 13). Plaintiff provides no argument or authority as to how this was an IDEA violation.

Plaintiff's Section 504 and ADA claims are based on NCISD's alleged IDEA violations, those claims are subject to issue preclusion. *See Ashley G. v. Copperas Cove Indep. Sch. Dist.*, No. 6:19-cv-420, 2021 WL 1840910, at \*12 (W.D. Tex. May 7, 2021), *aff'd sub nom. Ashley G. as Next Friend of M.G. v. Copperas Cove Indep. Sch. Dist.*, No. 21-50437, 2022 WL 797416 (5th Cir. Mar. 15, 2022). Second, Plaintiff only provides conclusory arguments in response to the State Defendants' motion. Specifically, Plaintiff states the "record demonstrates significant impairment with respect to Student's academic achievement and education" and that there is a question as to whether Plaintiff "is a qualified individual with a disability." (ECF No. 54 at 21). Plaintiff may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine dispute of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

As such, the Court finds the State Defendants are entitled to summary judgment on Plaintiff's Section 504 and ADA claims as a matter of law.

## IV. Conclusion

Based on the foregoing, the Court **RECOMMENDS** NCISD's Motion for Summary Judgment (ECF No. 46) be **GRANTED**, State Defendants' Motion for Summary Judgment (ECF No. 47) be **GRANTED**, State Defendants' Third

Motion to Dismiss (ECF No. 48) be **GRANTED IN PART** as to Plaintiff's claims against the Commissioner in his individual capacity and **DENIED IN PART** as to the State Defendants' standing and ripeness arguments, and Plaintiff's Motion for Judgment on Administrative Record against NCISD (ECF No. 49) be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on February 26, 2026.

Richard W. Bennett
United States Magistrate Judge